USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
GRACE BOZICK,                                                     :
                                                                  :
                                  Plaintiff,                      :
                                                                  :    19-cv-4045 (LJL)
            -v-                                                   :
                                                                  :    OPINION & ORDER
CONAGRA FOODS, INC., et al.,                                      :
                                                                  :
                                  Defendants.                     :
                                                                  :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

  Defendants Conagra Foods, Inc. and Conagra Brands, Inc. move for an order permitting them to conduct limited destructive testing of the PAM spray canister that is evidence in this case. Dkt. No. 54.

  The underlying action is for products liability, as well as negligence, breach of express and implied warranties, and deceptive business practices under New York General Business Law § 349. Defendants are the companies that design, manufacture and sell PAM, which is a non-stick cooking spray sold in a 12 ounce aerosol spray canister. Plaintiff is a New York consumer of the product. She alleges that, on September 11, 2008, while she was at home in the process of preparing and serving a meal, a canister of PAM that she purchased "unexpectedly and without notice caused a fiery explosion in the kitchen of her home." Dkt. No. 1 ¶ 23. She claims that, as a result of the malfunction of the can and the explosion of the product, she "sustained and suffered significant, serious, debilitating, permanent, and disfiguring injuries, including permanent scarring, physical limitations, extreme physical pain, discomfort, stiffness,

dryness, loss of sensation, hypersensitivities and mental anguish, requiring medical care including hospitalization." *Id.* ¶ 25.

The subject can contains warnings that it should be stored at room temperature and should not be placed on the stove or near a heat source. But, Plaintiff claims, the can was resting on a countertop away from the heat, when it exploded. *Id.* ¶ 23; *see also* Dkt No. 54 at 1 n.2. Plaintiff's theory of the case is that the can prematurely buckled and vented at room temperatures rather than being overheated because it was manufactured grossly out of specifications. Her theory is that the bottom of the container was made from steel that was too thin in comparison to the material specified for the can.

Defendants now would like to have an independent laboratory examine the subject can and measure the thickness of the can bottom to rebut the theoretical possibility that the can buckled because the steel was too thin and that it was out of specification. Their theory is that, even assuming the possibility that a can that is manufactured out of specification could explode at room temperature, the subject can was not manufactured out of specification. The explosion must have had other causes. The measurement apparently would require the laboratory to cut into the bottom of the can and thus would destroy its integrity. Defendants have provided a technical protocol to Plaintiff, identifying the locations for measurements and the standard tools and techniques to be used. Although Plaintiff objects to the limited destructive testing, she does not object to any of the specific provisions of the protocol.

The leading case on the criteria for judging a request to permit destructive testing of evidence is *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611 (D. Md. 2006). That opinion lays out a four-part test to determine whether to permit destructive testing of evidence:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at

>  trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Id.* at 614; *see Gross v. Lunduski*, 304 F.R.D. 136, 159 (W.D.N.Y. 2014); *see also RevoLaze LLC v. J.C. Penney Corp., Inc.*, 2020 WL 198422, at *1 (E.D. Tex. Apr. 27, 2020): *Anaya v. Tricam Indus, Inc.*, 2019 WL 5850554, at *2 (W.D. Tex. Sept. 19, 2019); *Komar Invs., Inc. v. Zurich Am. Ins. Co.*, 331 F.R.D. 181, 183 (S.D. Fla. 2019); *Landi v. Home Depot USA, Inc.*, 2018 WL 3436790, at *3 (M.D. Fla. 2018).

Defendants argue that each element of the test is met. The testing is directly relevant to Plaintiff's theory that the subject can may have been made with steel that was too thin, and not within design specifications. An independent laboratory will cut into the can and take measurements of the thickness of the can bottom. Defendants aver that they are not aware of an alternative way to take the proposed measurements other than by cutting into the can and taking the measurements and Plaintiff has not proposed an alternative. As to the prejudice to the non-movant and their ability to present evidence at trial, Defendants note that Plaintiff has photographs of the can as it currently exists and that only the bottom of the can will be cut. The remainder of the can will be available for use and there is no probative value of the unmeasured can bottom.

Plaintiff responds that the limited destructive testing is unlikely to be relevant. She claims that "it is extremely unlikely that such testing would find the type of infinitesimally small/microscopic variation that contributed to the buckling of the bottom canister dome and gas propellant venting that plaintiff alleges caused the explosion at under 180 psi." Dkt. No. 55 at 1. She also claims that metallurgical changes caused by extreme heat during the explosive event

materially alter the properties of the metal.  She further points out that to establish a prima facie case of a product defect under New York law, she will need only prove that (1) the product did not perform as intended; and (2) that she has excluded all reasonable causes of the accident not attributable to a product defect.  *Id.* at 1-2 (citing *Ramos v. Howard Indus., Inc.*, 885 N.E.2d 176, 178-79 (2008); *Speller ex rel. Miller v. Sears, Roebuck and Co.*, 790 N.E.2d 252, 254-55 (2003); *Halloran v. Virginia Chems.*, 361 N.E.2d 991, 993 (1977)).  Finally, Plaintiff complains that the testing will deprive the factfinder of "the ability to examine the intact canister for signs of, or the lack of signs of, product mishandling/abuse and understand the nature of the canister deformation, buckling and venting concerned in the subject action."  *Id.* at 2.

       The Court will permit the limited destructive testing of the subject can.  Defendants do not propose to "use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information."  *Mirchandani*, 235 F.R.D. at 615.  The proposed testing is directly relevant to Defendants' theory of the case and is necessary and reasonable in support of that theory.  Defendants proffer that the can has vents on the bottom designed to open (or vent) when the can reaches or exceeds a pressure of 180 psi and that the temperature of the can—assuming the bottom had the appropriate thickness—would need to exceed 190 degrees Fahrenheit (or far in excess of room temperature) to reach a pressure of 180 psi.  Evidence that the can bottom had the appropriate thickness thus would go far to proving Defendants' argument that it must have been Plaintiff's misuse of the product, rather than Defendants' negligence in design or manufacture, that caused the explosion.

       Although Plaintiff objects that the testing is unlikely to detect the flaws that she claims caused the explosion, "the plaintiff is entitled to decide when an issue is fully investigated for her own case; she is not entitled to make this determination for her opponents."  *Mendoza v. General*

4

*Motors LLC*, 2018 WL 1605722, at *5 (E.D. Cal. Apr. 3, 2018).  Thus, "[t]he fact that [plaintiff]'s experts do not believe that the proposed destructive testing will enable [defendants] to prove their case is irrelevant at this stage of the litigation." *Mirchandani*, 235 F.R.D. at 615. Defendants "need not prove their case for the opportunity to prove their case." *Id.*; *see Komar Invs.*, 331 FRD at 184 (permitting limited destructive testing); *Landi*, 2018 WL 3436790, at *9 (same); *see also Reed v. Ameriwood Indus, Inc.*, 2015 WL 13118019, at *2 (E.D. Tenn. Feb. 6, 2015).

      Plaintiff also has failed to identify any specific prejudice she will suffer as a result of the limited destructive testing.  Although she claims that the testing will prevent the jury from examining the subject can precisely as it existed before the requested testing, that same claim could be made in response to any motion for destructive testing and thus proves too much. Plaintiff fails to demonstrate how the ability to examine the subject can precisely as it existed after the explosion would be relevant to her case and, more precisely, how any evidentiary value the factfinder would find in examining the actual can could not be equally achieved by examining photographs of it and hearing from the witnesses who actually saw the can.  *See, e.g.*, *Mirchandani*, 235 F.R.D. at 615-16; *see also Petruk v. South Ferry Realty Co.*, 157 N.Y.S.3d 249, 253-54 (2d Dep't 1956) (noting that unaltered pretesting state of the evidence could be preserved by photographing it and all parties would be permitted to examine it prior to the destructive testing); *Cameron v. Dist. Ct. In & For First Judicial Dist.*, 565 P.2d 925, 929-30 (Colo. 1977) (noting that the costs of alteration were lessened by providing for safeguards such as photographing the object in its original state).

      Next, and significantly, Plaintiff has not "proposed viable alternatives to [defendants]' proposed destructive testing." *Mirchandani*, 235 F.R.D. at 616; *see also Komar Invs.*, 331 FRD

5

at 184 (granting request for destructive testing where, *inter alia*, no viable alternatives were offered by non-movant). Plaintiff makes serious allegations. If Defendants are to advocate for their alternative view of the evidence available to the jury, they have no apparent choice other than to conduct the testing requested through this motion.

Finally, as to the last factor, Defendants have presented their technical protocol to Plaintiff and Plaintiff has lodged no objection to that protocol.

## CONCLUSION

The motion for limited destructive testing of the subject can is GRANTED.

SO ORDERED.

Dated: November 30, 2020
New York, New York

LEWIS J. LIMAN
United States District Judge