```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
GRACE BOZICK,                                                    :
                                                                 :
                              Plaintiff,                         :
                                                                 :         19-cv-4045 (LJL)
              -v-                                                :
                                                                 :         OPINION & ORDER
CONAGRA FOODS, INC., et al.,                                     :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/2021

LEWIS J. LIMAN, United States District Judge:

Defendants Conagra Foods, Inc. and Conagra Brands, Inc. (together, "Conagra") move to strike Opinion No. 6 from the second expert report of Plaintiff's expert Dr. Thomas W. Eagar ("Dr. Eagar"). Dkt. No. 61.

## BACKGROUND

Familiarity with the Court's prior opinion is assumed. *See* Dkt. No. 56. The underlying action is for products liability, as well as negligence, breach of implied warranty, and deceptive business practices under New York General Business Law § 349. Plaintiff alleges that a can of PAM spray, which is designed, manufactured, and sold by Defendants, unexpectedly exploded in her kitchen causing a fiery explosion.

This action was initiated on May 6, 2019 and assigned to the Honorable Gregory H. Woods. The Court entered a scheduling order on July 10, 2019, providing for the completion of fact discovery by November 6, 2019, the service of Rule 26(a)(2) expert disclosures by a party-proponent of a claim by November 6, 2019, and the completion of expert discovery by February 17, 2020. Dkt. No. 19. The order also required the parties to meet and confer regarding destructive testing by December 27, 2019, including the deadlines for Rule 26(a)(2)

1

disclosures for any expert witness involved in destructive testing. On November 7, 2019, the Court granted an extension of time, providing for the completion of fact discovery, the service of Rule 26(a)(2) expert disclosures by a party-proponent of a claim by February 6, 2020, and expert discovery by May 15, 2020. Dkt. No. 26; *see also* Dkt. No. 31. The Court also extended the deadline for the meet and confer regarding the use of destructive testing and related experts to March 20, 2020. Dkt. No. 31. On February 4, 2020, the Court granted a second extension of time, providing for the completion of fact discovery as well as the service of Rule 26(a)(2) expert disclosures by party-proponents of a claim by March 13, 2020 and expert discovery by June 19, 2020. Dkt. No. 39. The order set a deadline for providing the status of the potential for destructive testing by April 24, 2020. *Id.* The action was then transferred to the undersigned on February 4, 2020.

On March 20, 2020, the parties filed a joint letter seeking an extension of time for the completion of fact discovery to May 18, 2020 and expert discovery to August 7, 2020, with Plaintiff to serve her expert reports by June 22, 2020 and Defendants to serve their expert reports by August 7, 2020. Dkt. No. 42. The Court granted that application. Dkt. No. 43. On May 14, 2020, the parties asked for a fourth extension of time to take depositions of Rule 30(b)(6) witnesses and two non-party witnesses and to exchange expert disclosures, with Plaintiff to serve her expert reports by August 14, 2020 and Defendants by September 25, 2020. Dkt. No. 44. The Court granted that request and scheduled a status conference for August 12, 2020. Dkt. No. 45.

At the status conference, the Court ordered that depositions of Rule 30(b)(6) witnesses be completed by September 24, 2020 and depositions of the two non-party witnesses be completed by November 2, 2020. Dkt. No. 46. Fact discovery would otherwise remain closed. The Court ordered expert discovery be completed by March 22, 2021. The Court gave Plaintiff until November 2, 2020 to serve her expert disclosures and Defendants until December 21, 2020.

Reflecting the colloquy at the conference, the Court also ordered that the parties submit a joint status report on the potential for destructive testing by November 20, 2020, and if Plaintiff sought destructive testing, to move by letter motion by December 28, 2020.

On November 2, 2020 and November 3, 2020, Plaintiff disclosed two engineering experts, Dr. Eagar and Dr. Lester Hendrickson ("Dr. Hendrickson"), respectively. On November 20, 2020, Defendants moved for an order compelling destructive testing. Dkt No. 54. The letter motion reflected that the parties had privately agreed to meet and confer regarding destructive testing by November 20, 2020, that Defendants desired to have an expert test the thickness of the bottom of the subject can to determine whether it was manufactured within specification, and that Plaintiff had not agreed to destructive testing. *Id.* Rather than join in the request for destructive testing and request her own protocols for such testing (and what the tests should attempt to measure), Plaintiff resisted Defendants' motion stating that destructive testing was unlikely to "produce useful data." Dkt No. 55.

On November 30, 2020, the Court granted Defendants' motion for limited destructive testing to test the thickness of the steel on the can bottom. Dkt. No. 56. The Court's order noted that Defendants had "presented their technical protocol to Plaintiff and Plaintiff has lodged no objection to that protocol." *Id.* at 6. Certainly, Plaintiff did not request that her own expert participate and conduct its own tests. On December 14, 2020, the Court granted a fifth extension of time, providing for the completion of expert discovery by April 21, 2021. Dkt. No. 60.

## DISCUSSION

On November 2, 2020 and November 3, 2020, Plaintiff disclosed the two reports by Dr. Eagar and Dr. Hendrickson, respectively. Dr. Hendrickson's theory was that the subject can was made from steel that was too thin in comparison the material specified for the product.

3

Destructive testing was done by Defendants on December 28 and 29, 2020, and the measurements were provided to both parties on January 14, 2021. Dkt. No. 61 at 1.

On January 25, 2021, Conagra disclosed Dr. Sarah Easley ("Dr. Easley") who opined that the "subject can was manufactured with bottom steel thickness and strength conforming to the design specifications that were established to control a minimum design buckling pressure of 180 psig." *Id.*; *id.*, Ex. A at 17. Dr. Easley opines that during the manufacturing process, there were "[t]wo regions, symmetrically located on either side of the central disc, had thickness values below the tolerance minimum for the raw steel material," and that the same pattern was observed for the exemplar can and "has also consistently been observed in measurements made using the same methods for other exemplar cans." *Id.*, Ex A at 17.

On March 3, 2021, Plaintiff served a second expert report from Dr. Eagar, issuing seven opinions (the "March 3, 2021 Report"). In the March 3, 2021 Report, Dr. Eagar acknowledges that Dr. Easley provided "proof that the containers met the design specifications." *Id.* at 2; *id.*, Ex. B at 11. But he opines that the decrease in thickness that occurs during the can-forming process of all cans impacted the subject cans differently than the exemplar cans and is less pronounced in the exemplar cans than in the subject can. He states that the can-forming process "introduces a weakness in the buckling strength of the bottom of the dome" of the subject can, but not the exemplar cans, "that reduces the failure pressure and temperature by 60 psi and 60 F" allowing the can to buckle at a temperature as low as 110-120 F. *Id.*, Ex. B. at 13.

Defendants claim that this portion of the report ("Opinion No. 6") introduces an entirely new theory different from that disclosed in Plaintiff's earlier expert reports. The earlier theory relied on a claim regarding the thickness of the steel in comparison to the specifications for the product. Opinion No. 6 relates to the thinning of the can's bottom in a limited location of the can. Defendants also claim that they would be prejudiced by the introduction of Opinion No. 6.

4

Not only does Plaintiff introduce a new theory not raised in the initial expert reports but, in order to test that theory, Defendants would have had to employ a different destructive testing protocol than that used in this case. The parties did not set out to measure areas of the can's bottom that the parties knew were thinned during the can-forming process and the measures that were taken confirmed only that there was a dip in all cans. No testing was done to determine the magnitude of the dip "around the entire circumference of the disk edge" in this case.

Plaintiff responds that the disclosure in the March 3, 2021 Report constitutes a "supplement" under Fed. R. Civ. P. 26(e). Plaintiff explains that Opinion No. 6 analyzes and discusses data which it claims was "unavailable" to the parties when Dr. Eagar presented his November 2, 2020 Report. Plaintiff argues that the thickness measurements of the subject can obtained by Defendants' destructive testing "provided Dr. Eagar sufficient data to formulate scientific opinions about the thickness variations in the bottom of the can that could not be made before the thickness data of the Subject Can was measured." Dkt. No. 62 at 1. Plaintiff also argues that the remedy of preclusion is not appropriate because the disclosure could not be made before Defendants conducted the destructive testing, Defendants would suffer no prejudice because Dr. Eagar has not yet been deposed, and the Court could cure any prejudice with a continuance. Plaintiff does not seriously argue about the importance of the evidence. *See id.* at 2-3.

Federal Rule of Civil Procedure 26(e) sets forth a party's general duty to supplement disclosures and responses. Rule 26(e)(1) provides that "in general" a party "who has made a disclosure under Rule 26(a), which includes expert disclosures, "must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process

or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e). Rule 26(e)(2) makes clear that for an "expert whose report must be disclosed under Rule 26(a)(2)(B) [i.e., an expert who is retained or specially employed to provide expert testimony], the "duty to supplement extends both to information included in the report and to information given during the expert's testimony." Fed. R. Civ. P. 26(e)(2). Applying the plain language of the Rule and reading it as a whole, Rule 26(e) imposes an obligation on the disclosing party when its prior disclosure or response "is incomplete or incorrect." The Rule does not create an exception to the requirement under Rule 26(a)(2)(B) that a party offering the opinion of a retained expert provide the other side a "complete statement of all opinions the witness will express and the basis and reasons for them" on a schedule set forth by the court. Fed. R. Civ. P. 26(a)(2)(B). Nor does it give a license to the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect. *See Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."); *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *6-7 (S.D.N.Y. Nov. 16, 2017). The mechanism to offer a new opinion out of time is a Rule 16(b)(4) motion for modification of a scheduling order which must be supported by good cause. Fed. R. Civ. P. 16(b)(4). It is not through Rule 26(e)

The motion to strike Opinion No. 6 is GRANTED. Opinion No. 6 is an opinion that Plaintiff's expert intended to express. It should have been disclosed at the time that Plaintiff's expert reports were due on November 2, 2020. Rule 26(e) does not provide a vehicle through which Plaintiff can make a late disclosure. Opinion No. 6, on its face, is not offered to supplement a prior opinion that is admitted to be "incomplete" or "incorrect." The expert report makes clear that "none of the opinions expressed in our original Report have changed due to the

6

arguments in the defendants' expert's Reports." Dkt. No. 61, Ex. B. at 2. It states that whether the thickness of the steel met design specifications "is not the issue in question" that Opinion No. 6 addresses. *Id.* at 6. Plaintiff does not dispute that "the fundamental opinions in Dr. Eagar's Report did not change" but argues instead that Opinion No. 6 should be considered a supplement because "thickness measurements of the Subject Can were taken by Conagra after the initial Report was prepared, which provided Dr. Eagar sufficient data to formulate scientific opinions about the thickness variations in the bottom of the can that could not be made before the thickness data of the Subject Can was measured." Dkt. No. 62 at 1. That is not the standard under Rule 26(e).

Plaintiff has not offered good cause for the late disclosure of the opinion. Although she claims that Dr. Eagar could not have offered the opinion before he had the thickness measurements from the destructive testing conducted by Defendants, she did not need to wait for Defendants to do the testing. She had the subject can and could have done the testing earlier if she believed that the variation in thickness across the bottom on the can might be a viable theory for the cause of the explosion. She offers no excuse for her failure to do so. She had the opportunity. The Court's orders provided ample time for her to meet and confer with Defendants to do such testing. Even when Defendants proposed destructive testing, she could have joined in the request and asked for testing of her own to be done. She did not but instead resisted Defendants' request. As a result, the testing since has been done and at the Defendants' expense. That such testing provided a response to her expert's opinion does not provide an excuse for her to do new testing. On that theory, each new theory offered in response to a failed earlier theory[1] would constitute a correction permitting parties to engage in a never-ending back-and-forth of

---

[1] The Court expresses no view as to whether the opinions offered here in the November 2 and November 3 reports are failed.

expert reports and—in this case—destructive testing. Defendants have asserted, without dispute from Plaintiff, that to address Opinion No. 6, Defendants would need to conduct a new round of destructive testing—if it could be done at all—and then would need to or have a right to offer a new responsive expert report. All of that would have been unnecessary had Plaintiff taken the measurements itself and included Opinion No. 6 in the initial expert reports.

The time has come for discovery to end and for this case to go forward on the theories that Plaintiff disclosed, as she was required to, on November 2, 2020. The case has been pending since it was filed on May 6, 2019 and discovery has been adjourned several times in this case, in part due to the difficulties scheduling the prior destructive testing. *See Shea v. Royal Enters. Inc.*, 2011 WL 2436709, at *8 (S.D.N.Y. June 16, 2011) ("Given the numerous extensions of the discovery deadline, the further delay of this two-year-old litigation is neither deserved nor warranted."). At this stage, and under the current discovery schedule, expert depositions are scheduled to be complete in less than a month by April 21, 2021, and summary judgment motions are due to be filed by May 5, 2021. The Court already scheduled a conference for April 27, 2021 to set a trial date. Plaintiff thus has had ample time to conduct discovery to try to prove its case. A further delay would only prejudice Defendants and the general interest of the courts in having disputes speedily resolved.

The Clerk of Court is respectfully directed to close Dkt. No. 61.

SO ORDERED.

Dated: March 30, 2021  
New York, New York  
_____  
LEWIS J. LIMAN  
United States District Judge